UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROY E. WHITE,

       Plaintiff,                                Case No. 04-71093

vs.                                           HONORABLE LAWRENCE P. ZATKOFF
                                                   HONORABLE STEVEN D. PEPE

BOAL BOURLIER, OFFICER SCHNIEDER,
OFFICER C. MARSH, OFFICER DANIEL DAVIS,
and OFFICER MILANO,

       Defendants.
_____/

REPORT AND RECOMMENDATION
ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (#22)

Plaintiff filed his complaint, *pro se*, on April 1, 2004, alleging excessive use of force by various Southfield police officers during his arrest on July 20, 2003, in violation of his Fourth and Fourteenth Amendment rights. He sues defendants in their individual and official capacities requesting $1,000,000 in compensatory and punitive damages. This Court granted Plaintiff's application to proceed without prepayment of fees and directed monthly payments from his prison account. Plaintiff's motion to file an amended complaint was granted, but no amended complaint was filed by the deadline set. Thereafter, Defendants filed this motion for summary judgment. Plaintiff sought an extension of time to respond and for an extension of discovery, which was granted, setting a discovery cut off of May 23, 2005. Plaintiff responded to the Defendants' motion

1

and Defendants filed a reply brief. Plaintiff filed a motion to compel discovery on May 10, 2005.

All pretrial proceedings have been referred pursuant to 28 U.S.C. § 636(b)(1)(A),(B). For the reasons that follow, IT IS RECOMMENDED that Defendants' motion for summary judgment be DENIED with regard to the claims of individual capacity, but GRANTED with regard to the official capacity claims which should be dismissed.

I.   BACKGROUND

   A.   FACTS

On Sunday, July 20, 2003, at approximately 5:53 a.m. the Southfield Police Department received a call regarding a burglary and theft of a purse from an occupied dwelling.[1] At approximately 6:20 a.m., while walking in the area of 12 Mile Road and Bermuda in Southfield, MI, Plaintiff was stopped and questioned by the Southfield Police regarding this incident. There is a dispute regarding whether Plaintiff was told he could go. A struggle ensued and Plaintiff was arrested and transported to the Oakland County Jail. Plaintiff was later transported to Providence Hospital for medical attention dealing with injuries to his wrist and other injuries. Plaintiff believes that he was targeted because he is African-American, and notes that all of the officers involved were Caucasian.

According to Plaintiff's complaint, he was assaulted that morning by Sergeant Boal Bourlier and others.[2] As noted in greater depth below, in his affidavit in response to this motion and at his

---

[1] The Police Report refers to the incident as a "home invasion" and also as a "MDOP," malicious destruction of property, because a rear doorwall glass was smashed with a large rock.

[2] It is unclear from the complaint whether Plaintiff was referring to Officer Boal or Officer Bourlier here. Plaintiff improperly captioned his complaint naming "Boal Bourlier" as a Defendant. Other information suggests that it was Sgt. Boal who first encountered Plaintiff and Sgt. Bourlier arrived later.

deposition, he indicates that the first officer who stopped him after checking things out told him that he could go. After he began walking, the officer without saying anything again blocked Plaintiff's path. Plaintiff says that when he stepped to the side to keep going the officer grabbed Plaintiff's wrist, which Plaintiff pulled back. Thereafter he was assaulted in efforts to arrest him. Defendants claim Plaintiff attempted to flee and resisted being handcuffed.

II.     ANALYSIS

    A.     SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment may be granted if the moving party demonstrates there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); s*ee also, Lenz v. Erdmann Corp.*, 773 F.2d 62, 63 (6th Cir. 1985). "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of [the] essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)).

The moving party need not support its motion with evidence disproving the nonmoving party's claim, but must only show that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In order to defeat a motion

3

for summary judgment after the moving party has met its initial burden, the nonmoving party must present some "specific facts showing there is a genuine issue for trial." *Id.* at 324. The nonmovant must produce evidence and not rely strictly on the pleadings. *Anderson*, 477 U.S. at 249-250; Fed. R. Civ. P. 56.

### B. FOURTH AMENDMENT EXCESSIVE FORCE

Plaintiff alleges Defendants used excessive force in arresting him and transporting him to the Oakland County Jail in violation of his Fourth Amendment rights. Where the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it invokes the protections of the Fourth Amendment, which guarantees citizens the right to be secure in their persons against unreasonable seizures of the person. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Determining whether the force used to effect a seizure is "reasonable" under the Fourth Amendment requires a balancing of the nature and quality of the intrusion on the individual's interests against the governmental interests at stake. *Id*. at 396.

It has long been recognized that an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *Id.* A sudden and unprovoked flight from a police officer can justify an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968). *Illinois v. Wardlow,* 528 U.S. 119, 124 (2000). Because the test of reasonableness under the Fourth Amendment has no precise definition or mechanical application, its application requires careful attention to the facts and circumstances of each case. *Gaddis v. Redford Twp*., 364 F.3d 763, 772 (6th Cir. 2004). Factors to look at include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Russo v. City of Cincinnati,* 953 F.2d

1036, 1044 (6th Cir. 1992) (quoting *Graham*, 490 U.S. at 396).

>The standard to judge the reasonableness of use of force is laid out in *Graham* as:
>
>>...use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *See Terry v. Ohio, supra*, at 20-22. . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson v. Glick*, 481 F. 2d, at 1033, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.

*Graham*, 490 U.S. at 396.

Here, the sole issue is whether Defendants' use of force was objectively reasonable.

    1.    *Plaintiff's Deposition Testimony*

According to Plaintiff's deposition, he was walking in Southfield, looking for work, on the morning of July 20, 2003. A police car pulled up next to him and the officer called him over to the car (Pl.'s Dep. 42). He went over to the car window and, upon request, gave his ID to the officer (Pl.'s Dep. 43). Plaintiff testified that after a brief conversation, the officer said he could go (Pl.'s Dep. 43). As Plaintiff continued to walk, the police officer swung the car around and up on the sidewalk, stepped out, and stood in from of him (Pl.'s Dep. 46). Plaintiff stepped to the side to go around the officer and the officer grabbed Plaintiff by the wrist (Pl.'s Dep. 47). Plaintiff pulled his arm away, and the officer grabbed his shirt (Pl.'s Dep. 54), put his hand on his wrist and around his throat and pushed him to the ground (Pl.'s Dep. 53). He was "hollering, screaming" because he was being kicked and hit (Pl.'s Dep. 49). Officers were telling Plaintiff to stop resisting, but he was laying flat on his stomach and not resisting (Pl.'s Dep. 55). One of his arms was behind his back

and the other arm was trapped under his body on the ground (Pl.'s Dep. 56). He was kicked in the head a few times and kneed in his thigh and groin (Pl.'s Dep. 57-58). The officers got him handcuffed and stood him up (Pl.'s Dep. 64). An officer sat him down in a police car (Pl.'s Dep. 65). While sitting in the car he pulled his arms, in handcuffs, from behind him to his front (Pl.'s Dep. 66). An officer opened the door and strapped him to the middle of the seat with the seat belts (Pl.'s Dep. 68). Once he was in the police car, he had no conversation with the officers.

      2.    *The Stop*

Defendant Sergeant Boal located Plaintiff walking down a street in close proximity to the burglary about thirty minutes after the burglary took place (Defendant's Motion for Summary Judgment (Defendant's Motion), Exhs. #1 and #2). Defendant Boal requested to see Plaintiff's identification to obtain a background check, which Plaintiff provided (Defendant's Motion, Exh. #2). The parties disagree about what happened next, but according to Plaintiff he began walking away, and tried to dodge Defendant Boal when he stepped in his path. Defendant Boal grabbed Plaintiff's wrist, and the arrest began. Officer Boal's Report states after speaking with the Plaintiff, Plaintiff "turned southbound and began to flee" (Boal Report, Exh. #2).

Although Plaintiff's proximity to the burglary was insufficient probable cause to justify an arrest, it was enough to justify further investigation. *Wardlow*, 528 U.S. at 124 ("officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation"). If Plaintiff attempted to flee, that in conjunction with the recent nearby burglary would justify a forcible detention for further investigation. *Id.*

      3.    *The Takedown*

Again, according to Plaintiff, after a brief conversation and being told he could go, Officer Boal got out of his car and stood in Plaintiff's path. Plaintiff "stepped around the officer" and Officer Boal then "grabbed me, and in the same motion, had me headed toward the ground" (Pl.'s Response to Defendant's Motion, p. 3). According to officers Milano and Boal, after Plaintiff attempted to flee Officer Boal grabbed the suspect by the shirt and officers Milano and Treworgy took him down to the ground.

To assess the reasonableness of force used to get Plaintiff to the ground, it must be determined if the Plaintiff posed a threat and if he actively resisted or attempted to flee. *See Russo,* 953 F.2d at 1044. There are disputed issues of fact on each of these issues that must first be resolved to determine the constitutionality of the forcible takedown of Plaintiff.

    4.    *The Struggle on the Ground*

Even if the initial take down is reasonable under the circumstances, a question remains if there came a point in time when further application of force was not needed and thus no longer justified. Arresting officers are not permitted to use force against an incapacitated suspect, even if he was previously resisting. *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002).

Plaintiff testified that he was not impeding his arrest, and was "just laying there" (Pl.'s Dep., 57) and presented "very little or no resistance" (Pl.'s Aff., 1). He claims that after he was on the ground the officers repeatedly and unnecessarily hit him, kneed him in the groin, and kicked him in the head (Pl.'s Dep., 57; Pl.'s Aff., 1-2).

Defendants claim that Plaintiff was resisting arrest, and they acted reasonably in their actions. They assert that they only took steps necessary to subdue Plaintiff. Defendants rely on a videotape from a police car that responded to the scene which shows several officers struggling to

7

keep Plaintiff on the ground while attempting to get handcuffs on him. While the videotape does not show the entirety of Plaintiff's body, it does show his head and upper body, and shows at least four officers clearly struggling on top of Plaintiff. There is a material issue of disputed fact whether these efforts were justified in an effort to gain control over him or were excessive efforts to injure or punish Plaintiff.

Reports by Officers Boal, Milano, Schneider, and Davis all state that Plaintiff was struggling on the ground, refusing to follow orders, and had his hands under him. The videotape does not show enough of the incident to determine conclusively what actually occurred.

Videotape of Plaintiff being transported to the police station shows Plaintiff's face and head and shows no evidence of bleeding, swelling, or other trauma, though Plaintiff alleges that he was bleeding from above his right eye. Reports from Dr. Peter Goodman, M.D., from the emergency room where Plaintiff was treated at 8:20 a.m. on July 20, 2003, show he complained of left thigh pain and wrist pain with at a level of 7 out of 10. While the report notes, "He states he knows [his wrist] is broken," X-rays revealed no fracture. He had full range of motion and the injury was diagnosed as an acute sprain in his wrist. Plaintiff was prescribed Motrin 800 mg which eventually lowered the pain level to 4.[3]

In Plaintiff's affidavit, he claims that a nurse cleaned his right eye wound before the doctor treated him and that he has another witness to this injury (Pl's Aff., 4). Plaintiff also claims in his

---

[3] The report also indicates "no signs of external trauma," no swelling, redness or wounds, a full range of motion, and a "[g]ood grip." "No other injuries in this event. No head hits, no loss of consciousness" (Defendant's Motion, Exh. 10). Dr. Goodman also notes, "Cranium unremarkable. EYES: Inspection of conjunctivae and lids reveals no acute abnormalities. External inspection of ears and nose reveals no acute abnormalities." While Plaintiff repeatedly complained that his handcuffs were too tight Dr. Goodman was "able to slide them up and down on his wrist without any difficulty" (Defendant's Motion, Exh. 10).

affidavit that he did not reveal the full scope of his injuries to the treating physician because he was threatened by Defendant Schneider (Pl's Aff., 4).

     5.    *Conclusion on Fourth Amendment Claims*

At the summary judgment stage, this Court must view the facts in a light most favorable to the non-moving party. If a fact finder were to accept the testimony of Plaintiff concerning the events of July 20, 2003, they could find his Fourth Amendment rights were violated in either the initial arrest or at some later point when the use of force was not necessary or any longer reasonable. Because there are disputed issues of material fact related to the initial arrest and takedown and also to the necessity and motivation of the parties in the ensuing struggle on the ground, summary judgment is inappropriate.

    C.    QUALIFIED IMMUNITY

Government officials performing discretionary duties are generally shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has defined a two-step test to analyze such claim. A court will first ask whether a constitutional right was violated and second whether the right was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id*. at 201. If, however, the first inquiry is satisfied, "the next, sequential step is to ask whether the right was clearly established." *Id*. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202

(citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

It was determined in section II.B above, that if Plaintiff's version of the facts were accepted, the jury could find a Fourth Amendment violation. This resolves the first test of *Saucier*. The next question is whether that right was "clearly established" so that "it would be clear to a reasonable officer that his conduct was unlawful." As with the summary judgment evaluation on the constitutional violation question, the qualified immunity analysis at the summary judgment stage must consider the facts in the light most favorable to the Plaintiff.

*Saucier,* like the present case, involved an excessive force claim – where "objective reasonableness" must be used by the fact finder to determine the substantive Fourth Amendment claim. Prior to *Saucier,* many courts thought that if a jury determined the use of force was objectively unreasonable under the circumstances, then that determination on the merits question also resolved the qualified immunity issue which uses a similar objective reasonableness standard. The Supreme Court in *Saucier*, however, specifically rejected the Ninth's Circuit's conclusion that "the reasonableness inquiry into [the alleged constitutional violation] meant that it need not consider aspects of qualified immunity, leaving the whole matter to the jury." *Saucier*, 533 U.S. at 200. The Court held that "the ruling on qualified immunity requires an analysis not susceptible of fusion with the question whether unreasonable force was used in making the arrest." *Id*. at 197. Therefore, *Saucier* cautions courts to keep distinct the qualified immunity and summary judgment analysis.

Again, if disputed issues of fact exist as to the degree of force used or the surrounding circumstances that might justify greater force, these factual disputes cannot be resolved at the summary judgment stage, but only at trial. At the summary judgment stage, the courts must look at the admissible facts in the light most favorable to the Plaintiff, and qualified immunity is available

only if so viewed the facts either do not make out a constitutional violation or, if there was a constitutional violation, if the violation did not involve a clearly established right that a reasonable police officer would recognize.

Here, the analysis above makes it clear that if Plaintiff's version of the facts is accepted by the jury, there was a constitutional violation of excessive force. In addition, if Plaintiff's facts are accepted – he did not resist arrest and encountered a forcible takedown, beating, kneeing and kicking – any objectively reasonable police officer would know that the use of that degree of force was excessive and in violation of the Fourth Amendments. Thus, summary judgment cannot be granted on Defendants' claims of qualified immunity.

D. OFFICIAL CAPACITY IMMUNITY

A claim against Southfield police officers in their official capacity is the equivalent of a suit against the city of Southfield. *Matthews v. Jones,* 35 F. 3d 1046, 1049 (6th Cir. 1994).[4] For a claim against the officers in their official capacity to succeed, "a plaintiff must 'identify the policy, connect the policy to the [government agency] itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993)

---

[4] *Matthews v. Jones,* 35 F. 3d 1046, 1049 (6th Cir. 1994), held:

A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 68, 109 S.Ct. 2304, 2310-11, 105 L.Ed.2d 45 (1989). Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint. See *Smallwood v. Jefferson County Government*, 743 F.Supp. 502, 503 (W.D.Ky.1990); Ky.Rev.Stat. Ann. § 95.010(e) (Baldwin 1989); see also *Brown v. Marshall County,* 394 F.2d 498 (6th Cir.1968). The County may be held liable for Matthews's injuries only if those injuries were the result of an unconstitutional policy or custom of the County. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

(quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)), cert. denied, 114 S. Ct. 1219 (1994); *see also Monell v. Department of Social Services,* 436 U.S. 658 (1978). Plaintiff has failed to allege or put forth any evidence of an official policy of the city of Southfield to deprive him of his Constitutional rights.[5]

Thus because Plaintiff has not alleged sufficient facts to support an official capacity *Monell* claim, that portion of his claim should be dismissed.

### E.   PLAINTIFF'S REQUEST FOR DISCOVERY

Plaintiff moved for a postponement of Summary judgment to complete discovery, arguing that Defendants have not been forthcoming with relevant documents, including his request for the policy of the police department regarding the application of force. Plaintiff's discovery matter has been handled in a separate order. Yet, because Plaintiff should prevail on the summary judgment on the Fourth Amendment and qualified immunity issues, no delay is needed for discovery. Defendants official capacity claim should be dismissed because of Plaintiff not having pled facts showing an official policy of the city of Southfield, and discovery is not allowed in order to try to find facts that would allow one to make a claim, Plaintiff will have relevant documents for the trial, but this motion can be determined without any further documents.

### III.   RECOMMENDATION

Therefore, IT IS RECOMMENDED that Defendant's Motion for Summary Judgment be DENIED with regard to the individual capacity claims against the Defendants for violations of Plaintiff's

---

[5]Plaintiff's complaint quotes a conversation he had with Detective William MacDonald, who said that the station was attempting to weed out officers who were brutal (Pl.'s Comp.10, Pl.'s Aff. 2-3). This suggests that the police station has a policy *not* to deprive individuals of their civil rights.

Fourth Amendment rights and with regard to their qualified immunity defenses.

IT IS FURTHER RECOMMENDED that Plaintiff's official capacity claims against the Defendants be dismissed as not being sufficiently pled to state a *Monell* claim.

Any objections to this Report and Recommendation must be filed within ten (10) days of its service. 28 U.S.C. § 636(b)(1); E.D. Mich. L.R. 72.1(d)(2). Failure to file objections within the specified time constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ivey v. Wilson*, 832 F.2d 950, 957-58 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically each issue contained in the objections.

Dated: August 18, 2005　　　　　　　　　　　s/Steven D. Pepe
　　　Ann Arbor, Michigan　　　　　　　　　United States Magistrate Judge

13

<u>Certificate of Service</u>

I hereby certify that on August 18, 2005, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following: <u>T. Joseph Seward</u>, and I further certify that I mailed a copy to the following non-ECF participant: <u>Roy E. White</u>.

s/William J. Barkholz<br>Courtroom Deputy Clerk