**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ROY E. WHITE,

                                                     CASE NO. 04-71093

       Plaintiff,                            HON. LAWRENCE P. ZATKOFF

v.

BOAL BOURLIER, OFFICER SCHNEIDER,
OFFICER C. MARCH, OFFICER DANIEL DAVIS,
and OFFICER MILANO,

       Defendants.

_____/

**<u>OPINION AND ORDER</u>**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on January 18, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Magistrate Pepe's Report and Recommendation on

Defendants' Motion for Summary Judgment.  The Motion is fully briefed and Plaintiff has filed an

objection to the Report and Recommendation.  For the reasons set forth below, the Court ADOPTS,

in part, and REJECTS, in part, the Report and Recommendation and GRANTS Defendants' Motion

for Summary Judgment.

## II. BACKGROUND

The Court ADOPTS the Report and Recommendation's statement of the facts. For ease of reference, the Court restates those facts here.

On Sunday, July 20, 2003, at approximately 5:53 a.m., the Southfield Police Department received a call regarding a burglary and theft of a purse from an occupied dwelling.[1] At approximately 6:20 a.m., while walking in the area of 12 Mile Road and Bermuda in Southfield, Michigan, Plaintiff was stopped and questioned by the Southfield Police regarding this incident. There is a dispute regarding whether Plaintiff was told he could go. A struggle ensued and Plaintiff was arrested and transported to the Oakland County Jail. Plaintiff was later transported to Providence Hospital for medical attention dealing with injuries to his wrist and other injuries. Plaintiff believes that he was targeted because he is African-American, and notes that all of the officers involved were Caucasian.

According to Plaintiff's complaint, he was assaulted that morning by Sergeant Boal Bourlier and others.[2] As noted in greater depth below, in his affidavit in response to this motion and at his deposition, he indicates that the first officer who stopped him after checking things out told him that he could go. After he began walking, the officer without saying anything again blocked Plaintiff's

---

[1] The Police Report refers to the incident as a "home invasion" and also as a "MDOP," malicious destruction of property, because a rear doorwall glass was smashed with a large rock.

[2] It is unclear from the complaint whether Plaintiff was referring to Officer Boal or Officer Bourlier here. Plaintiff improperly captioned his complaint naming "Boal Bourlier" as a Defendant. Other information suggests that it was Sgt. Boal who first encountered Plaintiff and Sgt. Bourlier arrived later.

path.  Plaintiff says that when he stepped to the side to keep going the officer grabbed Plaintiff's wrist, which Plaintiff pulled back.  Thereafter, he was assaulted in efforts to arrest him.  Defendants claim Plaintiff attempted to flee and resisted being handcuffed.

Following the arrest, Defendant was jailed for the alleged home invasion and on June 8, 2005, Defendant was convicted of the offense.

### III. LEGAL STANDARD

**A. Summary Judgment**

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted).  In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific

facts to demonstrate that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324.  The non-moving party must do more than show that there is some metaphysical doubt as to the material facts.  It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment.  *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## B. Qualified Immunity

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  "The standard is one of objective reasonableness, analyzing claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendants' position could have believed that his conduct was lawful, in light of clearly established law and the information he possessed." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995). Moreover, "[if] officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 349 (1986) (Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law.").

"The defendant as the movant in a motion for summary judgment must show that no genuine issues of material fact remain that would defeat his claim of qualified immunity. The plaintiff, however, carries the burden to allege and prove that the defendant official violated a clearly established right of which a reasonable person would have known." *Pray v. City of Sandusky*, 49

4

F.3d at 1158 (citing *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir.1994)).  "Thus, when a defendant moves for summary judgment based on qualified immunity, the plaintiff must: 1) identify a clearly established right alleged to have been violated; and 2) establish that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right."  *Id*.

## IV.  ANALYSIS

### A. Magistrate's Report and Recommendation

Magistrate Pepe's August 18, 2005 Report and Recommendation finds that there is a question of fact regarding whether the individual defendants used excessive force in arresting Plaintiff.  For this reason, the Report and Recommendation concludes that Defendants' Motion for Summary Judgment should be denied.  The Court disagrees and, for the reasons given in the following section, finds that there was no genuine issue of material fact regarding whether the individual defendants used excessive force.  Accordingly, the Court REJECTS this portion of the Magistrate's Report and Recommendation and now makes its own findings as to this question of law.

### B. Individual Defendants

Plaintiff alleges that Defendants used excessive force in arresting him in violation of his Fourth Amendment rights.  In essence, Plaintiff alleges that he was stopped despite doing nothing wrong, and that Defendant police officers kicked, hit, and kneed him as they attempted to handcuff him.  As a result of the alleged beating, Plaintiff claims that he suffered injuries to his wrist, head, thigh, and groin.  *See* Exhibit 9, White Deposition.  The Court is satisfied that, if true, Plaintiff's

allegations state a valid Fourth Amendment claim.  The Court finds, however, that Plaintiff has failed to present sufficient evidence to satisfy the summary judgment standard, and that Defendants' Motion for Summary Judgment should be granted.  In addition, and as explained in Section 4. below, the Court finds that the individual Defendants should be granted qualified immunity.

### 1. Defendants' Evidence

As the moving party, it is Defendants' burden to identify those parts of the record which establish that there is no genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. at 323.  Defendants assert that Defendant Sgt. Boal of the Southfield police was investigating a home invasion when he saw Plaintiff Roy White walking in the vicinity.  *See* Exhibit 2, Informational Police Report by Sgt. Boal.  Sgt. Boal stopped Plaintiff and spoke to him.  Officer Treworgy of the Lathrup Village Police and Sgt. Milano of the Southfield Police arrived to assist.  *See* Exhibit 3, Narrative Report of Officer Milano.  While Plaintiff sat on the ground, Sgt. Boal then ran Plaintiff's criminal background information.  *Id.*  After a few minutes, Sgt. Boal requested Plaintiff to stand up.  As he rose, Plaintiff stated "what's this all about I haven't done anything."  *Id.*  Plaintiff then turned south and began to flee.  *Id.*; *see also* Exhibit 2, Boal Report.

As Plaintiff began to flee, Sgt. Boal grabbed Plaintiff's shirt to slow his flight, and took Plaintiff to the ground.  *See* Exhibit 2, Boal Report; *see* Exhibit 3, Milano Report.  Officer Milano's report explains in detail the struggle that followed:

> Writer and Officer Treworgy grabbed on to the suspect and took him down on to the ground.  The suspect was able to get his hands under his body and refused to release them.  Officers made numerous loud commands to the suspect to stop resisting and to place his hands behind his back.  Suspect refused to comply with the commands.  Officers again gave loud verbal commands to stop resisting and place his hands behind his back.  The suspect again refused to comply.  Officers were able to pry his left arm from under his body at which time writer was able to apply one handcuff to his left wrist.  The suspect was actively resisting at this time.  Sergeant Bourlier then

6

arrived on the scene and assisted officers in attempting to handcuff the suspect. Officers were finally able to force the subjects [sic] left arm behind his back. Officer Schneider arrived at the scene and took control of the hand cuffs from writer and secured the right side. The suspect was advised he was under arrest. Officers Pete, Menzel, Bryant, Tijerina, Mcneil, Spl. Toupin and Davis arrived on the scene. The suspect was then stood up and searched.

Exhibit 3, Milano Report. The officers then used minimum force to place the sill uncooperative Plaintiff in the patrol vehicle, after which he was transported to the Southfield jail. *See Id.*

In support of Defendants' reports and deposition testimony, Defendants submitted a video tape of the arrest. The video shows numerous police officers arriving on the scene to assist in Plaintiff's arrest and shows Plaintiff lying on the ground under a number of officers. The video shows no evidence of any police brutality, but the tape also does not show the initial arrest and take down, and the video is only directed at approximately half of Plaintiff's body. Accordingly, though the video does not show any evidence of excessive force, it also does not conclusively show that none occurred. In addition to showing the latter part of the arrest, the video also shows Plaintiff in the back of the patrol car as he was transported to the Southfield jail. The video shows no evidence of any of Plaintiff's alleged injuries and the transportation takes place uneventfully.

Also in support of Defendants' police reports and deposition testimony, Defendants direct the Court to the medical records related to Plaintiff's medical treatment at Providence Hospital shortly following his arrest. Plaintiff complained of left wrist pain and left thigh pain. *See* Exhibit 10, Providence Hospital Records, 1-2. Plaintiff was given a physical examination which revealed no abnormalities.[3] *Id.* at 9. Plaintiff was diagnosed with an acute left wrist sprain, X-rays were

---

[3] Plaintiff's physical examination included an examination of his temperature, pulse, blood pressure, respirations, ears, nose, and throat as well as his cardiovascular, gastrointestinal, skin, musculoskeletal, and neurological signs. *See* Exhibit 10, at 9-10.

ordered, and 800 mg of Motrin was recommended.  *See id.* at 10.  Plaintiff was re-examined

following the X-rays.  The examining doctor, Peter Goodman, M.D., stated:

> The patient still complains of pain in his left wrist.  X-ray ready by Radiology
> negative for fracture or dislocation.  I have reexamined both wrists.  There is no
> edema.  No ecchymosis.  No wounds.  No redness and no deformity of any kind.
> The hands are unremarkable and the patient repetitively states his handcuffs are too
> tight.  I am able to move, slide his handcuffs up and down on his wrists without any
> difficulty.

*Id.* at 11.  Dr. Goodman prescribed 800 mg of Motrin and discharged the patient.  *See id.*

### 2. Plaintiff's Evidence

In support of Plaintiff's allegations, and in order to rebut Defendants' factual assertions,

Plaintiff directs the Court to his own deposition testimony.  Plaintiff asserts that he was walking

down the street when a police officer called him over to his police car.  *See* Exhibit 9, at 42.  The

policeman, Sgt. Bourlier, asked Plaintiff some questions and asked Plaintiff for his identification.

After patting Plaintiff down, Sgt. Bourlier told Plaintiff he could go.  *See id.* at 43, 46.

As Plaintiff started to go, Sergeant Bourlier swung his car around, blocking Plaintiff's path.

*See id.* at 46.  Sgt. Bourlier then exited the car, walked up to Plaintiff, and blocked his path.  When

Plaintiff attempted to step in the other direction, Sgt. Bourlier grabbed Plaintiff's wrist.  *See id.* at

47-48.  At this time, Sgt. Boal arrived.  Sgt. Boal pushed or threw Plaintiff to the ground and tried

to get his right arm behind his back.  Plaintiff was hollering and screaming as this occurred.

Defendants instructed Plaintiff to stop resisting arrest.  *See id* at 55.  Plaintiff asserts that he was not

resisting arrest, and that Defendants kept beating and kicking him as they tried to handcuff him.  *See*

*id.* at 56.  As the struggle continued, Plaintiff asserts that he was kicked above his right eye by one

of the Defendants, causing his eye to bleed and well up.  *See Id.* at 63.  Eventually, Plaintiff was

handcuffed and placed in the patrol vehicle.  Plaintiff asserts that he was not resisting at this time.

8

*See id.* at 65.

### 3. Summary Judgment Standard and Analysis

Plaintiff's deposition testimony contradicts the reports and testimony of Defendants and creates numerous questions of fact. The genuineness of Plaintiff's factual disputes, however, is called into question by the hospital records and by the video tape of the arrest. Plaintiff was thoroughly examined by Dr. Goodman at Providence Hospital on the morning of his arrest, but the only injury revealed was a sprained left wrist. Dr. Goodman's reports reveal no evidence of scratches, bruises, swelling, or a bloody eye. Likewise, the video tape of the transport does not reveal any injuries to Plaintiff's eye or face. Additionally, the video of the arrest shows no evidence of any beating and Plaintiff ultimately was jailed for the breaking and entering offense that was the reason for his arrest. Accordingly, the only evidence of Plaintiff's alleged beating and false arrest is his own testimony.

Pursuant to Sixth Circuit case law, this is insufficient. "Although the nonmoving party's evidence in opposition to summary judgment need not be of the sort admissible at trial, he must employ proof other than his pleadings and own affidavits to establish the existence of specific triable facts." *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Plaintiff has provided the Court with no evidence in addition to his own allegations of the incident. Defendants' reports and deposition testimony, as well as the submission of the video tape of the arrest and Plaintiff's medical records sufficiently rebut Plaintiff's unsupported testimony. For this reason, the Court finds that there is no genuine issue of material fact and that Defendants should be granted summary judgment.

9

### 4. Qualified Immunity Analysis

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In the present case, Defendants were performing their duties as police officers by investigating a reported crime. In the course of this investigation, Defendants exercised their discretion and determined that their was cause to arrest Plaintiff. Ultimately, Defendants' exercise of discretion ended up being correct as Plaintiff was jailed for the breaking and entering offense. During the course of the arrest, Defendants utilized force to handcuff Plaintiff and complete the arrest. Because the level of force required to effect the arrest involves many factors and can change at a moment's notice, the calculus for determining whether there was excessive force is not easily applied and should not be viewed with the 20/20 vision of hindsight. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989) ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.").

Even if the Court were to accept Plaintiff's unsubstantiated allegations, the Court cannot say that Defendants violated a clearly established constitutional right. Plaintiff admits that Defendants were conducting an investigation and that they were attempting to arrest him. Furthermore, as Defendants attempted to handcuff Plaintiff, they clearly instructed him to cease resisting. The Sixth Circuit has explained that "the right to make an arrest or investigatory stop carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Gaddis v. Redford Twp.*, 364

10

F.3d 763, 772 (6th Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. at 396).

After a thorough review of the level of force used by Defendants to effect Plaintiff's arrest, the Court finds that Defendants did not act unreasonably in applying force to complete the arrest and that a reasonable officer in a similar situation would have done the same. Accordingly, the Court HEREBY GRANTS Defendants' Request for Qualified Immunity.

**C. Official Capacity Claims**

As to Plaintiff's Official Capacity Claim, the Court agrees with the Magistrate's Report and Recommendation and HEREBY ADOPTS its findings. Plaintiff has failed to allege or put forth any evidence of an official policy of the city of Southfield to deprive him of his Constitutional rights. Accordingly, Plaintiff's official capacity claim should be dismissed.

## V. CONCLUSION

For the above reasons, the Court the Court ADOPTS, in part, and REJECTS, in part, the Magistrate's Report and Recommendation and HEREBY GRANTS Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: January 18, 2006

11

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 18, 2006.


s/Marie E. Verlinde
Case Manager
(810) 984-3290